May it please the court, Stephen Rosales on behalf of plaintiff appellant Donald Morinsky. As this court is well acquainted, the general issue in this argument is the ALJ's treatment or lack of treatment of the medical evidence contained in this record. Like most social security records that come before this court, there are more important records and less important records. Mr. Morinsky doesn't maintain that the ALJ need consider every last bit or every last page of the medical record, just those that are significant and probative. For instance, in this case, Mr. Morinsky has documented, or the ALJ did discuss, that he had some minor problems with hepatitis C without evidence of liver damage. Ms. Morinsky didn't complain that that treatment wasn't detailed enough because the record with respect to his hepatitis C isn't developed enough to be significant and probative. But specifically in this case, there is a significant and probative medical report in the record that the ALJ gave short shrift to, and that was Dr. McNairn's opinion, the consultative examiner. Dr. McNairn, at the request of social security, examined Donald Morinsky and completed a psychiatric report detailing 13 separate findings with respect to his mental functioning. Some were mild and others were moderate, and there was at least one, if not two, serious impairments. The ALJ did discuss this opinion and listed the serious impairments in detail as well as the mild one and then just categorized all the others as moderate. And then moved on and discussed the two state agency reports, which are non-examining record reviewing opinions that occurred after Dr. McNairn examined Mr. Morinsky. The first state agency actually found a non-severe impairment with nothing more than a mild impairment, I believe, in social functioning and the ability to maintain concentration at a persistent pace. Approximately a year later, the second state agency position reviewed the record, did an exam, and found that there were more significant impairments and found some mild as well as moderate impairments, and that appeared in the record at 283 and 284. Let me ask you a question. Did Dr. McNairn had to have made an assessment of severe impairment to make your case, or is moderate impairment enough? Well... If you could talk about the difference there. Sure. The appellee does mention at page 16 of his brief the listing with respect to the regulation that deals with the step three of the sequential discipline analysis, whether someone meets or equals a listing. And the commissioner has promulgated some regulations that say when we use the forms that we use, and that's the state agency's reports that appear in this record, when we use those forms, we check boxes that say none, mild, moderate, I believe marked, sometimes you see it as severe, and then extreme. But that regulation also says that when we check none and mild, that means a non-severe impairment. And so in absence of an explanation, what does it mean when you check moderate or above, because the regulation does say in most listings when you have at least one extreme or a couple marked or more checked, you meet step three and the analysis terminates. So the commissioner says if you've got several, a couple marked or at least one extreme, you're disabled at step three. If you have none or mild checked, then they're not, that doesn't indicate a severe impairment at all. But the commissioner has strangely been silent for, I think, decades now on what exactly moderate means, even though he uses that word throughout the disability analysis, provides forms to practitioners to check boxes using that term. And so to answer your question in a roundabout way, I believe Dr. McNairn, when he diagnosed his impairments, assessed a gap, I believe, of 50, which while not a finding with language that's necessarily transferable to Social Security terminology, does indicate more moderate or serious condition in a sort of a whole patient analysis. And then imposed impairments that constellational, as a constellation, demonstrated a severe impairment of his mental, his mental impairment, well, severe limitation of his mental impairment, Your Honor. And so I don't think it's a question where if we just back out those impairments that Dr. McNairn said were serious, I believe the getting along with coworkers or the public or even supervisors, that we can say everything else was non-severe. Because that's a factual question, not a regulatory question. And I think the commissioner has abdicated his regulatory responsibility in telling us what means moderate. But that seems like a broader question. So with respect to this case, do we not defer then to the ALJ then if there's moderate, descriptions as moderate, and he gets to interpret it? Not under the case law, Your Honor. Vincent v. Heckler makes clear that significant and probative evidence needs to be considered. None of the cases that the commissioner cites in their brief or the district court cited below Magellanes and more specifically on page 16 of the Pele's brief, Turner, allow an ALJ to take an opinion and embrace part of it and ignore the other part of it without articulating specific legitimate reasons. Turner is a very good example. The court at 1223, 1224 of that opinion provides a detailed analysis where the ALJ had a psychiatric opinion or a mental health professional opinion, spends a paragraph explaining how the ALJ dealt with those portions of opinion he didn't agree with and detailed his rationale for not accepting that opinion, and then spends another paragraph explaining how the ALJ with that same opinion adopted other portions of that same opinion and provided a detailed analysis. And so what's missing here in this case and what the district court in Apelli jumps over is that analysis. We don't contend that the ALJ could have simply provided a more detailed analysis. Now, obviously, I would disagree that he could based on this record because of the Orn case with respect to that there's only an examining position in here as well as two non-examining. But if he had done his job right, he would have did what they did in Turner and as well as Magellanus earlier in that decision, which is provide this Court with an analysis of why the moderate doesn't matter. But he didn't here. All we have is the post hoc articulations of the Commissioner, which aren't allowed or shouldn't be considered by this Court, I apologize, explaining why the ALJ could have did this or should have did that. But the reality is if you look at Turner, he doesn't do what the ALJ did in Turner and that's why Turner affirmed. Can I go back to the question that was asked before? Let's assume all of the findings were moderate. Yes. We had no severe. Right. Would there be under the law, would that be enough to then have him be disabled? I think so, Your Honor. If you look at page 34 and 35 of the administrative record, which were the hypothetical questions, the vocational expert, the first hypothetical question on 34 mirrors the ultimate finding of the ALJ with respect to the functional capacity of Mr. Morinsky that he found. And the second hypothetical, and if you read the State Agency's opinions that I've cited as well as Dr. McNairn's opinion, you see that he's adopted those limitations that he believes may be applicable to this case, the social functioning problems. In the second hypothetical, he asked the vocational expert to assume an individual that has difficulty or an inability to complete a normal work day or work week. Now, he didn't provide any more definition, but he just, whether that's they can work half the week or 80 percent of the week or 10 percent of the week, we don't know. But in general, someone who has some difficulty or complete difficulty with completing a normal work day, not starting, but completing a normal work day or work week, the vocational expert responded there wouldn't be any work available. And so Dr. McNairn specifically found that this individual would have problems completing a normal work day and work week and having problems maintaining concentration or having difficulties in punctuality and attendance. The State Agency also found some moderate impairment in sustaining concentration and persistence in completing some tasks. And so it's not, to be, always to be honest, but to be honest, I would have liked, what I would have done if I was administrative counsels, which I always do, I would have read Dr. McNairn's complete opinion verbatim to the vocational expert and said, with these consolation of moderate, serious, the mixture of the milds, give me your opinion, because that's the proper hypothetical. What I think the ALJ did was look at this opinion that he didn't want to adopt completely, but he thought, okay, I'll pick the most serious, the most serious limitation, the ability to complete a normal work day and work week, and we know from Social Security 96-8P that that is the most serious limitation, because you have to be able to work eight hours, five days a week. I know I'm really short on time, but the answer to your question is it's relevant, it's not harmless error, because the BE gives us a hint that some difficulty in performing, whether moderate is enough or more, we don't know, but some difficulty in completing a normal work day or work week obviously would impact ability to perform work activity. Finally, 96-8P also specifically says that an ALJ, when he has a medical source statement, cannot simply just ignore parts of it. He must say why his RFC is different than that RFC of the medical source statement. The ALJ didn't do that here. And I'll reserve the rest of my time if I may. We'll give you a couple of minutes. Thank you, Your Honor. Good morning, Your Honors. My name is Patrick Snyder. I represent the Commission on Social Security. One quick point to start out with regarding the second hypothetical is the ALJ actually stated in the second hypothetical was assumed that this person would be unable to complete a work day or work week without the interruption of psychological-based symptoms. Now, nowhere in the record, in Dr. McNard's opinion, nor in the ALJ's RFC, does it ever have the functional capacity of not being able to sustain a normal work day or work week without interruption. So, therefore, the second hypothetical remains just that hypothetical. The first hypothetical does, in fact, reflect the ALJ's RFC. And that's why the first hypothetical is the one that's pertinent to this case. Now, the issues in this case boils down to whether the ALJ properly accommodated Dr. McNard's limitations regarding whether the claimant could sustain and complete a full work week or work day. Now, the ALJ in this case did accommodate those limitations by limiting the claimant here to a low-stress job, which the ALJ specifically defined as little change in the work environment, and also by looking at the claimant's own complaints of not being able to work with people and of also having anxiety. So the low stress specifically addressed the claimant's complaints of having anxiety, and the ALJ also had an RFC of only occasional contact with supervisors, coworkers, and the public, and also limited the claimant to unskilled work. Now, this Court has found in Thomas v. Barnhart that a low ability to concentrate for sustained periods of time is accommodated by unskilled work. The record further supports the ALJ's decision that this claimant can do work, because as ALJ said in his decision, the claimant has been able to keep up his medical appointments. He goes to AA meetings, and he's able to sustain activities all day, including taking care of himself and his elderly blind mother. Now, I'm happy to answer any other questions. Let me, I guess, maybe back up a little bit to your very first point that you were making, because it seems Dr. McNairn found that the plaintiff had a moderately impaired ability to complete a normal work day and work week without interruption from psychologically-based symptoms. Is that correct? Correct, Your Honor. All right. And in addition, the plaintiff's treating physicians found that he had a GAF, this global assessment functioning score, between 35 and 50, both of which indicate major impairment in social and occupational functioning and indicate the plaintiff is either unable to work or unable to keep a job. Is that correct? Well, the GAF scores from the various mental health centers that the claimant went to take into consideration things that the agency does not consider. So they do take into consideration such things as financial well-being, et cetera. Is that correct or not correct? The correct statement is that the claimant did have a GAF of 35 and 50. However, that does not necessarily mean that the claimant cannot work. All right. Well, I guess despite the ALJ's findings that he accepted Dr. McNairn's assessment of plaintiff's limitation due to this mental illness, he relied on this first hypothetical. And I guess I want you to go back and tell me why that was correct for him to rely on the first hypothetical, which didn't include Dr. McNairn's assessment that plaintiff's mental illness would interfere with his ability to complete a normal workday without interruption, which is the assessment echoed by plaintiff's treating physicians. So can you explain that? Yes, Your Honor. Yes, Your Honor. So what Dr. McNairn found was various limitations which the RFC did accommodate, which the ALJ accommodated in his RFC. Now, that specific limitation regarding an ability to be interrupted by psychological symptoms throughout the workday, the claimant here complained of certain psychological symptoms such as anxiety and inability to work with people. Now, the ALJ accommodated those symptoms in his RFC by limiting claimant to low-stress work. Now, low-stress work, the ALJ further went on to define to mean little change in the work environment. Additionally, because the claimant in this case also complained of such psychological symptoms of being afraid to be with people or around people, here the ALJ limited the claimant to only occasional contact with coworkers, peers, and the public. But I guess the other question that's related to this is under the law, wasn't the ALJ required to set for specific legitimate reasons for disregarding this opinion? Yes, Your Honor. And where did he do that? In this case, the ALJ specifically in his RFC analysis discussed both Dr. McNairn's opinion, which he did fully accommodate, and he also discussed the claimant's substance abuse treatment and attendance at AA on page 13. And then on page 14, and I'll read in full the last sentence of the RFC analysis, he testified to a range of daily activities which are consistent with a mental capacity for unskilled work. He drives a car, shops, keeps medical appointments, and takes care of an elderly parent. Right here, the ALJ is specifically noting things in this record that's specific to this claimant which shows that he's able to keep medical appointments, which is probative of being able to go to work on time. I'm not sure that that quite answers the question, though, because if I read the ALJ's opinion, I don't see the language. I reject the opinion of Dr. McNairn for these reasons. True? Yes, Your Honor, because the ALJ in this case did not reject Dr. McNairn. But I think that was the question. I mean, that you can see that there is no express rejection of the treating physician's opinion. Your contention is he didn't reject him. So aren't we saying the same thing? But if we accept the Petitioner's view that, in fact, what the ALJ did was rejected, then, in fact, we have to reverse. True? Your Honor, if you believe that the ---- In other words, if we think crediting everything that, in fact, the ALJ was rejecting the treating physician's analysis, then we'd have to reverse because the ALJ didn't expressly reject it. Your Honor, the ALJ in this case gave sufficient facts which substantially support his RFC. No, I understand what you're saying. I'm just analytically, that's where we are, isn't it? There is ---- I know that your answer is he didn't reject it. I just want to make sure that we're on the same page. Hypothetically, even if the ALJ did, in fact, reject certain components of Dr. McNairn's decision, there is Ninth Circuit case law which says that the ALJ does not need to specifically use the words, I reject these certain mental limitations. Instead, the ALJ can go through, and from reading the ALJ's decision as a whole, you can see that he did. But it's the Commissioner's standpoint that that is not the case here. Okay. So I think, in short, this case boils down to whether the ALJ's decision is supported by substantial evidence. And I think in this case, when you look at the facts and you look at Dr. McNairn's opinion and the RFC assessment that the ALJ decided that it is supported by substantial evidence in this Court, it should affirm that decision. Thank you very much. Thank you. Thank you. We have two minutes on the clock. Thank you, Your Honor. Judge Murguia, is it? Thank you. I'd like another chance at answering your question with respect to moderate. Wait just one second until we get the time. I apologize. There we go. Pelli represented that the RFC assessment is consistent with Dr. McNairn's opinion. And even though I've lived with this case for coming on now two and a half years, it just popped into my head that the ALJ asked the Vocational Nurse to assume a limitation of low-stress work, which she defined in the hypothetical on page 34, as little change in work environment. Well, Dr. McNairn said that the claimant's ability to deal with various changes in the work setting is moderately impaired. So if Dr. — if the ALJ adopted Dr. McNairn's opinion and adopted that finding into this, then the ALJ is saying that with respect to moderate here, it makes significant impact. Well, all I want to know is why didn't the moderate finding with respect to cleaning a work day or work week not have significant impact and have that explained to me? And so the idea of how to define moderate or is moderate severe or not severe is a tough question because the regulation provides really no guidance, but the ALJ's actions with respect to other findings that were just moderate indicate that the ALJ thought it was severe because he included that limitation with this hypothetical and ultimately in his RFC. But for some unstrange reason, which I think because of the second hypothetical, chose to ignore, from our point of view, the most pertinent one, the ability to complete a normal work day or work week. And so as Your Honors was questioning, the Commissioner doesn't say that Dr. McNairn's opinion wasn't adopted. They just say that it wasn't adopted completely. It seemed to imply that we can adopt it selectively, and I don't think that the Court allows that to happen under the case law that's been cited. Okay. Thank you for your arguments. The case just shortly submitted for decision, and I appreciate your briefing and your arguments today. And we'll be in recess until tomorrow. All rise.
judges: Huff, Thomas, Murguia